In the Matter of A. F. GILBERT & CO., Bankrupt.

No. 1107–62.

United States District Court
D. New Jersey.
June 27, 1963.

Ronald Owens, Newark, N. J., for trustee.

Ira A. Levy, Newark, N. J., for Ida Morrof, petitioner.

WORTENDYKE, District Judge.

In this voluntary bankruptcy case, a stockholder creditor of the bankrupt has petitioned this Court to review an order of the Referee, made on January 2, 1963, confirming sale of certain assets of the bankrupt, consisting of certain molds

located at various manufacturing plants of others than the bankrupt, located in New Jersey and Ohio, and certain special fittings furnished to a customer of the bankrupt which had been rejected as not conforming to the contract for the same.

Petitioner for review charges that the sale was not properly advertised; that the price obtained was grossly inadequate; and that no complete inventory and appraisement of the assets was made.

The schedules annexed to the bankrupt's petition listed personal property assets of a total value of $1,161.05, consisting of stock in trade ($911.05); a 1956 Chevrolet automobile ($150.00); and office and business equipment and fixtures ($100.00). Accounts receivable totalled $11,939.39. Claims of unsecured creditors aggregated $25,105.83. Petitioner's claim is upon a note payable and amounts to $8,861.82. She complains principally that some of the molds were of substantial value, and that the Trustee failed to realize that certain merchandise of bankrupt in the Esso Marine warehouse, Bayonne, New Jersey, could be used to complete performance of a contract of the bankrupt, and thus create a receivable of $6,000.

A meeting of creditors was called on December 3, 1962, on due notice, to be held December 18, 1962, to consider the sale of the office furniture, equipment, stock and the 1956 Chevrolet automobile, to Frank W. Robinson, for $500.00, and to sell the molds to the same person for $75.00. The notice stated that, if said assets were ordered sold at public sale, such public sale would be held on December 27, 1962, to be reported for confirmation on January 3, 1963.

Testimony was adduced before the Referee on December 18, 1962 disclosing that, in addition to the personal property itemized in the schedules annexed to the bankrupt's petition, there were various molds at different locations in the States of Ohio and New Jersey; that the molds for nylon inserts were or were about to become obsolete and, therefore, were of scrap value only; and that other molds, which were custom items, had been used, but their future use was speculative. With respect to the account receivable from Panama Transport & Tankers Co., in the amount of $6,001.67, it was explained that the material involved was special in character for foreign type application; and that after having been placed aboard a vessel, it was found to be incorrect, requiring that it be sent back to be reworked. The fittings required in connection with the material cost the bankrupt approximately $4,000, for which it was still indebted. To rework the material would require supervision without which the material itself would be of little value. The evidence further disclosed that in addition to a mold at the plant of Nylon Molded Products, and a mold at Lee Rubber Co., there was a mold at Garrettsville, Ohio, and another at the plant of Republic Rubber Co. The molds were manufactured in 1958 or 1959, at costs ranging from $1,100 to $3,500.

The Referee was properly concerned with keeping down the expense to the bankrupt estate of sending an appraiser to the various locations of the molds, in view of their questionable value. Accordingly, the Referee ordered a public sale, which was held on December 27, 1962, at which the molds and the material returned for reworking were sold for $2,000. This sale was duly reported for confirmation, and was confirmed on January 2, 1963.

Section 70(f) of the Bankruptcy Act, 11 U.S.C. § 110(f), provides: "The court shall appoint a competent and disinterested appraiser and upon cause shown may appoint additional appraisers, who shall appraise all the items of real and personal property belonging to the bankrupt estate and who shall prepare and file with the court their report thereof. Real and personal property shall, when practicable, be sold subject to the approval of the court. It shall not be sold otherwise than subject to the approval of the court for less than 75 per centum of its appraised value. * * * "

In Bragg v. Gerstel, 5 Cir., 1945, 148 F.2d 757, at p. 760, which construed § 70 (f), the court states: "The court unquestionably ought generally to appoint appraisers as the section requires before a sale of the estate, but this is for the information of the court, the creditors and bidders, where it can be of help. It is not a condition precedent to a sale. Here the personal property was slight, and its value cuts no figure. * * * The question before the referee was not one of ordinary values, but of law and practical business judgment. Discretion was not abused in proceeding without a formal and useless appraisal."

Collier, 4 Coll.Bkcy. 14th ed., 1809, says:

"Section 70(f), however, does not bind the court to an appraisal. The court may completely disregard it, if it is satisfied that a sales price is adequate." In his Certificate of Review, the Referee in the case at bar reports that from the testimony of two witnesses at the meeting of December 18, 1962, to which he gave full credence "it appeared that the molds of the bankrupt were located at various manufacturing plants in New Jersey and Ohio; that some molds, because of innovations in this field of marine engineering, were obsolete or about to become so; but that there was a speculative value in other molds because customers might order replacement parts. From their testimony it also appeared that the special fittings furnished Panama Transport & Tankers Co., S.A. had been rejected as not conforming to the contract for same." The Referee's summary finds complete support in the record. His conclusion that the evidence indicated that the values involved were trifling, was warranted. His exercise of discretion to dispense with appraisals and thereby avoid incurring their disproportionate cost was not an abuse of his equitable jurisdiction. The sale was duly authorized and properly confirmed.

During the oral argument upon the Petition for Review the Court suggested that the Trustee cause appraisals to be made of the remaining molds provided petitioner give security for payment of the cost of such appraisals if such cost exceeded the aggregate of appraised values. The parties accepted the suggestion. However, upon reconsideration, mea sponte, I am convinced that the cost of such appraisals would be disproportionate to any benefit which might conceivably be derived therefrom and, accordingly, I rescind my previous suggestion.

The petition of review is dismissed. An appropriate order may be presented.